UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MARK A. CHOMOS,

        Plaintiff,                      Case No. 1:15-cv-395

v.                                          Honorable Paul L. Maloney

CARMEN PALMER et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Mark A. Chomos presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Michigan Reformatory (RMI). He sues the following RMI employees: Warden Carmen Palmer; Deputy Wardens Scott Schooley and Gregory Schipper; Grievance Coordinator K. Miller; Lieutenant (unknown) Bonn; Sergeant (unknown) Cunningham; Assistant Resident Unit Supervisor (ARUS) (unknown) Prince; and Correctional Officer (unknown) Jones.

Plaintiff alleges that, on November 29, 2014, he was assaulted by another prisoner. Officers Williams and Rinkey subdued Plaintiff and placed him in handcuffs. Defendant Sgt. Cunningham escorted Plaintiff to the medical unit for treatment of his wounds. Plaintiff's assailant was escorted to segregation by Officer Williams.

While Plaintiff was in the medical unit, Defendant Cunningham took numerous photographs of Plaintiff's injuries. Cunningham also took Plaintiff's bloody clothes from him. Plaintiff then told Cunningham that he wished to refuse protective custody.

Officer Streasick escorted Plaintiff from the medical unit to the cages located in the control center. Defendant Cunningham came to the cages to explain to Plaintiff that the assault looked bad on camera and that he was going to leave the decision about placement in temporary protective custody to Defendant Lt. Bonn, who would interview Plaintiff before leaving to go to the chow hall. At approximately 7:15 p.m., Officer Pulido escorted Plaintiff to temporary segregation, without the benefit of an interview with Bonn. In the segregation unit, Officer Shinaberger strip-searched Plaintiff. Shinaberger told Plaintiff to calm down and that he would be out of segregation by Monday morning, after Defendants Prince and Schooley returned to work. After Plaintiff was placed in his segregation cell, Officer Cunningham brought

- 2 -

him replacement clothes. Cunningham again explained that the decision whether to place Plaintiff in segregation was left to Defendant Bonn.

On December 1, 2014, Plaintiff filed a grievance to the effect that inadequate staffing had led to the assault. Also that day, Plaintiff stopped Defendant Prince during rounds, asking about his placement in segregation. Defendant Prince responded that he had not seen any paperwork and did not know why Plaintiff was in segregation. Prince informed Plaintiff that he would look into the matter. Sometime later that day, Plaintiff wrote another grievance, this time claiming that he was being held in segregation without notice or other process. The following day, December 2, 2014, Plaintiff stopped Captain May during rounds, asking why he was still in segregation. Defendant May told Plaintiff that he would speak with Defendant Schooley to see why Plaintiff remained in segregation. On December 3, 2014, Plaintiff again stopped Defendant Prince to ask about his continued segregation. Prince again explained that he did not know why Plaintiff remains in segregation. At about 4:00 p.m. that same date, Defendant May stopped at Plaintiff's cell to inform Plaintiff that May could not find any paperwork about the segregation. During rounds that afternoon, Defendant Cunningham told Plaintiff that, on November 29, 2014, he had sent both Defendant Schooley and Defendant Prince an email, attaching the video of the assault.

On December 4, 2014, Plaintiff again stopped Prince, who repeated that he did not know why Plaintiff was in segregation. During his rounds after lunch on December 4, Defendant May informed Plaintiff that he would call Prince about why Plaintiff was still in segregation. Defendant May used a unit cordless phone to make the call while Plaintiff was watching. That evening, Plaintiff asked an unidentified person for envelopes for legal mail, but his request was denied.

On the morning of December 5, 2014, Plaintiff stopped Captain Cusack during rounds, again explaining his problem. Later that morning, Plaintiff again asked Defendant Prince about his continued segregation. Prince again denied knowledge of why Plaintiff was in segregation. Lieutenant Whitinger then promised Plaintiff that he would look into the matter. The following morning, December 6, 2014, Whitinger told Plaintiff that he could not find any paperwork about Plaintiff's segregation. Whitinger told Plaintiff to talk to Defendant Bonn in the afternoon. Plaintiff asked Defendant Bonn, who told Plaintiff that he could not have authorized the placement in segregation, as he was not working on November 29, 2014.

On December 7, 2014, Plaintiff wrote three grievances: (1) about an unspecified problem, naming Bonn; (2) about an alleged denial of access to the courts; and (3) about the denial of a haircut while in segregation. That afternoon, while on rounds, Defendant Jones refused Plaintiff's request to place the grievances in the outgoing mail, advising Plaintiff to send them the next day.[1] Plaintiff promptly wrote a grievance against Defendant Jones. On December 8, 2014, Plaintiff yet again spoke with Defendant Prince about his placement in segregation and about staff having refused to send out his grievances. Defendant Prince explained that he was backed up on investigations and would not be able to look into Plaintiff's concerns. Plaintiff then sent a letter to Defendant Palmer, complaining that he had been denied due process. Finally, on December 9, 2014, Plaintiff was released from segregation, after he signed a release from protective custody.

Plaintiff thereafter wrote a grievance about having been denied yard privileges during the eleven-day segregation period. He also filed a grievance against Palmer. Plaintiff complains that

---

[1]Although Plaintiff does not so indicate in his complaint, he apparently alleged in his grievance that Defendant Jones told him that the mail bag had already been taken back to the control center. (Ex. G to Compl., docket #1-2, Page ID#61.)

Defendants Palmer, Schooley and Miller all denied his grievances without interview or investigation. In addition, Defendant Schipper denied a grievance at Step II without investigation. Plaintiff appealed the denial of all grievances to Step III on February 10, 2015.

Plaintiff complains that Defendants Palmer, Schooley, Schipper, Prince, and Miller denied him his First Amendment right to redress of grievances, due process, and equal protection. Plaintiff also alleges that Defendants Bonn, Cunningham, violated his rights to due process and equal protection. In addition, Plaintiff alleges that Defendant Jones denied him his right to redress of grievances under the First Amendment and denied him equal protection. Further, Plaintiff alleges that he was denied his right to access the courts when Jones refused to take his grievances in the afternoon and told him to wait until the next day, and when an unidentified person denied his request for envelopes for his legal mail. For relief, Plaintiff seeks compensatory and punitive damages.

## Discussion

### I.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Placement in Segregation without Due Process

Plaintiff alleges that Defendants collectively confined him to segregation without notice or an opportunity to be heard, in violation of his right to due process under the Fourteenth Amendment. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake.

*Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation for 30 days did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Here, Plaintiff alleges only that he was placed in temporary segregation for eleven days. He fails entirely to suggest that his segregation at ECF imposes an atypical and significant hardship within the meaning of *Sandin*. He therefore fails to state a due process claim against any Defendant based on his temporary placement in segregation.

**B.     Grievances**

Plaintiff alleges that Defendants Palmer, Schooley, Schipper, Prince, and Miller denied or rejected his grievances without due process of law and failed to investigate and promptly address his complaints about his placement in segregation. He also contends that Defendants' actions in handling his grievances violated his First Amendment right to redress of grievances.

To the extent that Plaintiff alleges that Defendant Jones interfered with his grievances, he fails to state a claim. Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).

Plaintiff fails to make specific factual allegations against Defendants Palmer, Schooley, Schipper, Miller, Bonn, Cunningham or Prince, other than his claim that they failed to conduct an investigation in response to his grievances and improperly denied his grievances. Government officials may not be held liable for the unconstitutional conduct of others. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter*

*v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff alleges no such active conduct by Defendants Palmer, Schooley, Schipper, Miller, Bonn, Cunningham and Prince. He therefore fails to state a claim against them for the handling of his grievances.

        Moreover, the Sixth Circuit has not recognized a freestanding First Amendment right to file grievances. Instead, solely in the context of retaliation claims, the Sixth Circuit has stated that there is a First Amendment right to redress of grievance, and then only to the extent that a prisoner may not be subjected to retaliation for filing a institutional grievance. *See Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999)). Plaintiff, however, has not alleged that any Defendant took retaliatory action against him for filing grievances. At best, his allegations support an inference that one or more Defendants mistakenly placed him in segregation and negligently failed to release him as promptly as he would have liked, not that they acted with a retaliatory intent. The Sixth Circuit has never held that an inmate has an independent First Amendment right to file an institutional grievance, apart from the right not to be subjected to retaliation for filing one.

        For all these reasons, Plaintiff fails to state an actionable claim based on the filing, investigation, or resolution of his grievances.

### C. Access to the Courts

Plaintiff argues that, on the evening of December 4, 2014, an unidentified person denied him envelopes to send out his legal mail. In addition, during the afternoon of December 6, 2014, Defendant Jones refused to take his grievances and place them in the outgoing mail, telling Plaintiff to mail them the next day.

Plaintiff's allegation concerning the denial of envelopes fails to identify any Defendant responsible for the conduct. As previously discussed, government officials may not be held vicariously liable for the unconstitutional conduct of others. *Iqbal*, 556 U.S. at 676; *Monell*., 436 U.S. at 691; *Everson*, 556 F.3d at 495. In the absence of allegations that Defendants personally engaged in the actions about which he complains, Plaintiff fails to state a claim against any Defendant for some an unnamed officer's failure to provide legal envelopes. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing Plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.").

Moreover, even had Plaintiff properly alleged which Defendant was responsible for refusing to provide envelopes, he would fail to state an access-to-the-courts claim. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977).

The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir.

1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Plaintiff wholly fails to allege that he suffered actual injury to any pending litigation or that the litigation was of a type protected by the First Amendment. Indeed, Plaintiff fails to allege that he suffered anything but a temporary inconvenience by not receiving envelopes on one evening. His allegations fail to rise to the level of a constitutional claim.

### D. Equal Protection

Plaintiff alleges that Defendants denied him his right to equal protection. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Plaintiff's allegations on this point are wholly conclusory. He merely states that he is being denied equal protection. Plaintiff provides no specific factual allegations to support his

contention. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

### E. Eighth Amendment

Although Plaintiff does not expressly allege that Defendants violated his rights under the Eighth Amendment, he complains that, while he was in segregation, he was denied exercise in the yard and a haircut. The Court therefore will consider whether his allegations state an Eighth Amendment violation.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical

claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347); *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). Although it is clear that Plaintiff was denied certain privileges as a result of his segregation, he does not allege or show that he was denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008).

Plaintiff suggests that he was denied outdoor exercise during his placement in segregation. It is well established that "'total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees.'" *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir. 1995) (quoting *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983)); *see also Argue v. Hofmeyer*, 80 F. App'x 427 (6th Cir. 2003). Nevertheless, it is equally well established that allegations about temporary inconveniences do not demonstrate that prison conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)).

Here, even accepting as true Plaintiff's allegation that he received no out-of-cell exercise while he was in segregation,[2] Plaintiff's allegations describe a mere temporary inconvenience. Plaintiff alleges only that he was kept in segregation for eleven days, without access to outdoor exercise. Plaintiff does not allege that his cell was too small to permit any exercise or that he suffered any ill effects from the temporary limitation on his yard privileges. Short-term deprivations of out-of-cell exercise doe not violate the Eighth Amendment. *See, e.g., May v. Baldwin*, 109 F.3d 557, 565-66 (9th Cir. 1997) (denial of out-of-cell exercise for 21 days did not rise to Eighth amendment violation); *Knight v. Armontrout*, 878 F.2d 1093, 1096 (8th Cir. 1989) ("Denial of recreation for a short period, per se, is not a constitutional violation."); *Davenport v. DeRobertis*, 844 F.2d 1310 (8th Cir. 1988) (upholding a 90-day segregation threshold before five hours of weekly out-of-cell exercise is required), *cited with approval in Pearson v. Ramos*, 237 F.3d 881, 884-85 (7th Cir. 2001); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) (no Eighth Amendment violation when plaintiff was held in segregation without outdoor exercise for 28 days).

Finally, Plaintiff's allegation that he missed a haircut demonstrates a temporary inconvenience of the most minimal sort. The allegation wholly fails to support an Eighth Amendment claim.

---

[2]The Court accepts Plaintiff's allegations as true, as it must at this stage of the proceedings. *See Denton*, 504 U.S. at 33. Nevertheless, the Court remains cognizant that MDOC Policy Directive 05.03.104, ¶ I, provides that prisoners in segregation have access to the leisure time activities under the segregation standards set forth in Policy Directive 04.05.120. Those standards require that any prisoner not serving a sanction of loss of privileges receives a minimum of one hour per day, five days per week, of out-of-cell exercise. The rule also prohibits any segregation prisoner being deprived such exercise for more than 30 consecutive days. *Id.*, ¶ V(21).

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  April 30, 2015                     /s/ Paul L. Maloney
                                           Paul L. Maloney
                                           Chief United States District Judge